We will move now to Appeal 23-1082, United States v. Michael Karmo, and Ms. Rameh will move first to you. Good morning, and may it please the Court, my name is Colleen Rameh, and I am an attorney with the Federal Defender's Office, representing Michael Karmo in this case. In this case, the law enforcement accessed Mr. Karmo's real-time cell site location information without a warrant. They knew that he was a felon, they knew that he probably possessed a firearm, and they shortly following a period of civil unrest. The litigation in the District Court kind of took an unusual turn. As I was sitting here preparing for this, it seems like everyone sort of lost the forest for the trees. He filed a motion to suppress and a motion for a Franks hearing based on what the District Prosecutor's Office knew at what time. So if we kind of go back to the timeline here, we have a report comes in from a CI to the Waverly, Iowa Police Department, who then relays a report to Kenosha Police, who then relays a report to the FBI, who then asks AT&T for this information without a warrant. At some point, it appears clear in hindsight that the CI told the Waverly Police Department that, well, he said some people were going and picking people off and maybe looting. But more than likely, upon further questioning, she said, no, no, no, he didn't say he was going to do that. That turned into somewhere along the line, he is intending to go and loot and pick people off. And that is the basis on which the District Court found that there was exigent circumstances in this case and bypassed the warrant requirement. That is a material misrepresentation of the information that law enforcement possessed. And I think that the District Court and the parties sort of got off into discussing what the specific FBI agent knew when he made that representation to AT&T. However, what really is at issue here is, were there exigent circumstances that existed to support a warrant? Why does any of that matter after Hammond? Your Honor, I believe that, as I argued in my reply brief, that the government has waived their reliance on Hammond. They can't do that. United States v. Cade says you can't waive reliance on a case like Hammond. Well, Hammond was really cabined to the specific facts. Which are almost the exact same as the facts here. The facts aren't really developed here. There is a specific difference in this case of the facts that we know were that he was, Mr. Carmo was in and around a hotel when they were tracking him. That is as much as I could find in the record. Isn't that enough? Well, that is afforded different protections than being on public roads. Being in your hotel room is afforded protections more akin to being in your home in terms of privacy. Hammond really relied on the fact that the defendant in Hammond was on public roads and in a parking lot. Now, yes, they did ultimately find Mr. Carmo in a parking lot, but they were tracking him for hours. They were tracking his cell phone. It wasn't a beeper on his car. It wasn't something like that. They were tracking his physical whereabouts, not the whereabouts of his car or anything like that. We just don't have a sufficient record to know where exactly he was during those times and whether or not it actually is distinguishable from Hammond. If you were right that there should have been a Franks hearing, does the exclusionary rule even apply? I mean, if there was no... There's no warrant. If there's no warrant and they did not have a good faith basis for relying on this information, then... What law says that? There's no warrant, okay? So, does the exclusionary law, does the exclusionary rule apply to the act, to the Stored Communications Act? You've got the statutory... Right. ...2027. We've also got the constitutional case law with regard to exigent circumstances. Exactly. So, I think, Judge, I'll let Judge Kirsch follow up. Yeah, under the act, does the exclusionary rule apply? No, it would apply under the Fourth Amendment. Okay, so there's no... Your argument is that because there's no exigent circumstances... Correct. ...that they needed to get a warrant. Correct. So, disregard the act altogether. Well, the act imputes exigent circumstances, right? The act specifically says you can access these under exigent circumstances. So, if there are no exigent circumstances, they can't rely on the act, and then we'd need a warrant. But what's the argument here that there's no exigent circumstances... The argument... ...based upon the facts that the police officer knew, even if the facts were slightly wrong? The argument is that they relied on this motive that had been ascribed to him. So, the facts that they knew and had gotten from the CI were just that he was a felon traveling to Kenosha and probably had some firearms. I thought it was more than that, though. I thought there was shooting involved. The issue was whether who was going to do the shooting, and what was the evidence regarding the shooting? The evidence that was in the Waverly Police Department's police report was that he said he had told... He had allegedly told the CI that some people were looting and shooting. And then when pressed, presumably when pressed, I'm inferring that, she said, no, no, no, he didn't say he was going to do that. President Trump was visiting the area. He was probably going. It could have very well been that he had an interest in self-defense. I mean, it could have been. Yes, it could have been. Sure. No, but the point is that there was this motive ascribed to him that she expressly disclaimed. I'm sorry. Go ahead. Counsel, what troubles me about your argument is that Franks, as Judge Kirsch kind of, I think, alluded to, deals with warrants, right, and affidavits. And we're not talking about warrants here. We're talking about whether there were exigent circumstances and also whether there was a good faith basis for... Under the Fourth Amendment, we talk about good faith and whether the officers had a good faith basis to believe there were exigent circumstances. And under the Act, we're looking at the provider because the provider, in good faith, believes that the emergency involved danger of death or serious physical injury, right? And so Franks seems like an odd fit here. I agree with that, Your Honor. And so what... I mean, I can see where you can make the argument to a district court that perhaps some additional inquiry needs to be made to test whether or not the good faith was a reasonable good faith, right? And so we should hear from the officers, kind of see what they did, et cetera, et cetera. But the... But under... I mean, Franks also makes the burden tougher on you as a defense counsel, right? And so what are we to make of the request for a Franks hearing in a situation like this? Right. And this was a motion to suppress and a Franks hearing. And for a Franks hearing, I think because there is this suggestion that the law enforcement has to present the provider with exigent circumstances, and that was the crux of the problem here, right? That was the misrepresentation. So it feels like a Franks hearing because the provider is sort of taking the role of a court in deciding whether or not they're... I see. Right? And so I think that that's how we got into a Franks discussion in the district court, not being the attorney who litigated this below. And that's how we took this sort of turn because we're sort of in this middle ground. Maybe it's just better characterized as a request for an evidentiary hearing. Yes, I think that that's... With regard to good faith. Right. And whether or not the officers, as a whole, were relying on good faith, were acting in good faith. You may reserve the rest of your time. Thank you, Ms. Romay. Thank you, Your Honor. We'll give you a little bit more time than that. Don't worry. Mr. Proctor, you're next on behalf of the government. Thank you, Your Honors. May it please the court. Mr. Proctor, I take it that the government wouldn't have a problem if a district court in a situation like this... If a district court had some serious concerns about the underlying motivations of the officer, decided, you know what, I think we're going to do an evidentiary hearing to figure out exactly what was going on that led to the request to the provider. I take it that, as a general rule, that sort of procedure is not something the government would have... The government wouldn't object to a district court within its discretion having an evidentiary hearing like that. If the facts presented called for... There was a material issue of disputed fact that required testimony to resolve, I think the government would be obligated to... Yeah, that's okay. In this situation, though, Your Honor, the facts that were at issue were resolvable on documents. They were laid out, and the district court was able to... It just had to do with how to interpret those documents. The district court looked at those documents and was able to determine that it could resolve it. There was a clear typo. They resolved exactly when the FBI received certain information, when the Waverly written report was produced, that was all able to be resolved without testimony, and the district court, therefore, did not see it required to do that. Mr. Proctor, the way I understand your argument here is there's no search. The Fourth Amendment does not apply. Yes. We're not in Fourth Amendment land at all. We're only proceeding under the Act, right? I wanna put a... If Hammond applies, right, the Fourth Amendment does not apply here, and everything occurred under the Act. Correct. The exclusionary rule does not apply to the Act. Correct. Right? So if the officer made a misstatement under the Act, right, and there's no Fourth Amendment search, and there's no exclusionary rule, the misstatement doesn't matter. And under our reasoning under Hammond, that makes sense because we say it's not a Fourth Amendment search. It's just information to which anybody could have had access. Your Honor, I agree with that. If there's no Fourth Amendment, then suppression is not a remedy, and that's made clear in the SCA. That's the end of it. The same case. Yeah. But in case there's a concern about guardrails, if an officer is found to be misstating facts, that is going to seriously impact that officer's career. Judicial findings... Right. And these are... I assume these are just like affidavits that they're presented on... I don't even know any... I don't remember anymore. Under the Act, is this information presented under oath? No, it's not necessarily presented under oath. There's no requirement under oath that it be presented under the Act. It is up to the provider to be convinced or... I'll step back a second. The law enforcement could simply tell the provider, we have exigent circumstances. It is up to the provider to decide if that's enough or they need more to release information under 2702C4. Here, there was more of a statement made, but there's no standard as to what law enforcement needs to tell the provider to convince them to release. And of course, the law enforcement officer can have more problems if there was a situation where the Fourth Amendment does apply. Let's say the law enforcement officer was seeking information to track the defendant in his or her home. The whereabouts... We want to track his cell phone, which he has in his pocket, because we want to see from what room to room he's going to to see if there's drug activity going on. Whatever the case may be, right? See if there's other people in the house. Whatever the case may be. There, the Fourth Amendment may apply. I agree with that, Your Honor. Under cases such as Supreme Court in Carroll, where they had a tracking device that was sent for the purpose of seeing where a certain item was moving within houses. If that's the purpose, yes. Where we're only looking to locate a specific person, I think that's a different situation. Which is here, which may have been even if the officer made a mistake. Clearly, there was a mistake made. Even if the mistake was made, even if it was a dishonest mistake, here the officer just kind of gets lucky because it doesn't matter. Because the Fourth Amendment doesn't apply, right? And the Act does not provide for exclusion of evidence. I agree with that. That's the end of the case. Yes, the government agrees with that. Even though there may be a gap. Yes. Fourth Amendment doesn't apply under Hammond in this case. Suppression is not a remedy. I agree with that. And I want to kind of set the stage as well, Your Honor, that overall, the police did good work here. They acted quickly to stop and identify, to identify a seemingly dangerous person who was illegally transporting weapons to the scene of recent riots. Once he was located, evidence was there. Is that enough for exigent circumstances? For exigent circumstances here, Your Honor, I can parse that out more. Here, one thing that— Take the statement, put the statement to the side. Dispute about the statement. We have an area where there is rioting going on. And there have been shootings in the area. And so law enforcement learns of a felon who is going to that area from out of state with guns, with lots of guns. Is that enough for exigent circumstances? It could be. And I think that cases—we can look at cases where—in Rosario, for instance, where the court found that there was good faith belief in exigent circumstances where somebody was transporting or had stolen a number of guns. Guns can be, in certain circumstances, an exigency, especially—and I think in Huddleston, the court had mentioned that if there's a likelihood that a gun is going to be used, in that case, they had a violent felon trespassing in a home, and that was a breach of a home, court found that that gun can be exigent circumstances. Here, on top of that, Your Honor, we have text messages that Mr. Karmoff sent to the source on his way to Waverly with a picture of himself holding guns and then another picture with an AR-15 type rifle with a large drum that he calls the game changer. The only reference that he's making to that is what he is going to do in Kenosha. He is going to change the game. That is the only reasonable inference to take from that. That adds on top of just merely possessing guns, which the source said were machine guns that he had. Again, at the time that the FBI and law enforcement in Wisconsin received the information from Waverly, they knew that Mr. Karmoff was likely already in Kenosha or somewhere close. They needed to act fast. I think it would be almost absurd to think that they would not act on this, would not consider this exigent circumstance, that this was a person that they needed to locate, and what they did to locate him was get this exigency pin or location information. It's a minimally intrusive way of trying to locate someone. They found him in a public parking lot. They did not breach a home. They did not even breach a hotel room based on any warrantless activity. The breach of the hotel room later came from consent by Mr. Karmoff, as well as the search of his vehicle. There was later search warrants executed at his residence and again at the hotel. Your Honors, unless there's any further questions, I'm happy to rely on my briefs and ask that the Court confirm. Thank you, Mr. Proctor.  Your Honors, just one quick point. Everyone operated below as if the Fourth Amendment applied. This issue was relevant. It was out there. Everyone was aware of it. The government expressly declined to argue that the Fourth Amendment did not apply. Then there are facts that were not developed in the record that would be material to deciding whether or not Hammond controls. Hammond explicitly said that it emphasized that law enforcement used the real-time CSLI to find Hammond's location in public, not to peer into the intricacies of his private life. It said the facts did not suggest that law enforcement used either the real-time CSLI or the beeper to examine the defendant's movements inside of a home or other highly protected area. In this case, we know that Mr. Karmoff was inside the hotel room because they searched it afterwards. He had belongings there. They monitored him for hours and only approached him once he was in a parking lot, the parking lot of the motel. Presumably, at some point during their monitoring, he was inside the hotel room, and that is afforded more protections. That wasn't ever developed in the record because the government expressly chose not to pursue that argument. For these reasons, this case should be decided about exigent circumstances. Thank you. Thank you very much, Ms. Romay. Thank you very much, Mr. Proctor. The case will be taken under advisement.